**FARMERS & MERCHANTS STATE BANK OF KRUM, Appellant,**

v.

**REECE SUPPLY COMPANY, Appellee.**

No. 11–01–00345–CV.

Court of Appeals of Texas, Eastland.

May 23, 2002.

Rehearing Overruled Aug. 1, 2002.

Donald Mills, Coleman & Mills, P.C., Grapevine, for appellant.

Carlyle Chapman, Locke, Liddell & Sapp, Dallas, for appellee.

Panel consists of WRIGHT, J., McCALL, J., and McCLOUD, S.J.[1]

1. Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at

### Opinion

AUSTIN McCLOUD, Senior Justice.

The issue in this summary judgment case is whether the guaranty agreement is an unconditional payment guaranty or a collateral conditional guaranty. Reece Supply Company (Reece) sued Farmers & Merchants State Bank of Krum (Farmers) on a guaranty agreement signed by Farmers. The trial court granted Reece's motion for summary judgment. Farmers appeals. We affirm.

The summary judgment proof reveals the following information. David White, sales manager for Reece, stated in an affidavit that G.R.A.V.I.T.Y. Enterprises, Inc. (Gravity) contacted Reece concerning a contract Gravity had with U.S. Tobacco Company. Reece agreed to provide Gravity transformers to be used by Gravity in its contract with U.S. Tobacco. The sale of the transformers was conditioned upon Gravity's bank presenting to Reece a letter of credit or other acceptable assurance of payment for the cost of transformers ordered by Gravity. Farmers provided Reece with a written agreement to pay the amount due for transformers shipped to Gravity in connection with the U.S. Tobacco contract. Reece shipped 2,250 transformers to Gravity. The cost of the transformers sold to Gravity was $82,552.50. Neither Gravity nor Farmers paid Reece for the transformers shipped by Reece to Gravity.

Jim Chambers, president of Gravity, stated in an affidavit that it was clear in conversations between the representatives of Gravity and Reece that the transformers purchased from Reece would be used by Gravity in connection with Gravity's contract with U.S. Tobacco and that the transformers would need to be operable, safe, and fit for that purpose. Chambers stated that he contacted Farmers and asked Farmers if it would assure Reece that Gravity could pay for working transformers shipped by Reece pursuant to the agreement between Gravity and Reece. Chambers stated that the transformers shipped by Reece were unsafe. The transformers would overheat and posed a serious fire hazard, and Gravity could not use the transformers shipped by Reece. Because the transformers were faulty, Gravity refused to pay Reece. Gravity informed Farmers that the transformers were faulty and instructed Farmers to make no payment to Reece until the problem was solved. Chambers stated that, thereafter, Reece came to Gravity's headquarters and retrieved the transformers Reece shipped. The transformers were never returned to Gravity.

Vaughn Andrus, president of Farmers, stated in an affidavit that Farmers agreed to send Reece a letter for the purpose of assuring Reece that, if Reece would ship working transformers to Gravity according to all of the terms of the agreement negotiated between Reece and Gravity, Reece would be paid. Andrus stated that the November 4, 1997, letter to Reece was assuring payment if, and only if, Reece performed according to the agreement between Reece and Gravity. The agreement called for the shipment of working, non-hazardous transformers that Gravity could use in connection with its contract with U.S. Tobacco. Andrus stated that Farmers received a letter from Chambers detailing certain safety-related problems with the transformers. Farmers learned that Reece had retaken possession of the faulty transformers shipped to Gravity.

The November 4, 1997, letter, signed by Andrus, provided in part:

Reece Supply Company

Attn: David White

PO Box 565545

Dallas, TX 75356

Dear Mr. White:

G.R.A.V.I.T.Y., Inc. of 803 North 5th Street, Sanger, Texas, has a Line of Credit with us for the purpose of buying supplies to be sold to U.S. Tobacco. It is our understanding that G.R.A.V.I.T.Y, Inc. will purchase from you approximately 3,000 transformers over the next few months. That order will amount to approximately $121,255.

Our bank will guarantee that each order placed by G.R.A.V.I.T.Y, Inc. will be paid *as agreed*, seven (7) days after shipment, FOB, Sanger, TX. (Emphasis added)

Farmers does not contend that the guaranty agreement is ambiguous. Farmers asserts that the affidavits of Chambers and Andrus are admissible not to vary or alter the terms of the letter but to show that a fact question exists as to whether or not the conditions of the guaranty and of the underlying contract between Reece and Gravity had been fulfilled.

Reece cites *Universal Metals and Machinery, Inc. v. Bohart*, 539 S.W.2d 874, 877 (Tex.1976), and argues that Farmers may not rely upon the underlying contract between Reece and Gravity because the guaranty agreement signed by Farmers was an unconditional payment guaranty. We agree. The supreme court in *Bohart*, stated:

A number of judicial precedents have held that guaranties, like the one in this case, are absolute rather than conditional, primary rather than secondary, and guarantees of payment rather than guarantees of collection. A discussion of many of those cases may be found in the dissenting opinion of the court of civil appeals and need not here be repeated.

523 S.W.2d 279, at 288–291. The guarantor, who contracted as a primary, absolute, unconditional obligor, is not freed from liability because of the forged signature of the maker. *Ganado Land Co. v. Smith*, 290 S.W. 920 (Tex.Civ.App. 1927, writ ref'd); *El Paso Bank & Trust Co. v. First State Bank*, 202 S.W. 522 (Tex.Civ.App.1918, no writ).

Justice Guittard, in his dissenting opinion in *Bohart v. Universal Metals and Machinery, Inc.*, 523 S.W.2d 279, 288–90 (Tex.Civ.App.-Dallas 1975), *rev'd*, *Universal Metals and Machinery, Inc. v. Bohart*, supra, discussed the obligations of "primary" and "secondary" guarantors:

A "guaranty" is a species of indemnity contract. It is a promise to stand responsible for occurrence of an event that may not be directly within the control of the immediate parties to the contract. The problem of interpretation is to identify the event for which responsibility is assumed. If that event is a third person's discharge of his legal obligation, no liability arises unless the third person is legally bound. Accordingly, the guarantor's obligation is termed "secondary." If that event is a third person's performance of a specified act, the guarantor's liability arises when the third person has failed to perform as specified, irrespective of his legal obligation. In this situation the guarantor's obligation may properly be termed "primary."

Justice Guittard stated further:

Texas authority, also, supports an interpretation of "guarantee" as consistent with a primary obligation. In *El Paso Bank & Trust Co. v. First State Bank*, 202 S.W. 522, 524 (Tex.Civ.App.-El Paso 1918, no writ), a bank sent a telegram to another bank stating, "[we] guarantee payment" for a carload of watermelons to be shipped to a produce company. The court held this telegram to be "an

absolute guaranty of the payment of the money," and, therefore, a "primary and positive agreement" rather than a collateral liability. Accordingly, the suit on the guaranty was held not to be subject to the defenses that the melons did not come up to the agreed standard of weight or quality or that they were not shipped within the time agreed upon between the buyer and the seller. This result was reached even though the telegram did not expressly use the term "primary obligation."

The court in *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951), stated that, to achieve the true intention of the parties, we should examine and consider the entire writing and seek to harmonize and to give effect to all of the provisions of the contract so that none will be rendered meaningless.

■ Farmers contends that the guaranty was conditioned on Reece supplying transformers to be used by Gravity in its contract with U.S. Tobacco. Reece failed to supply transformers to Gravity that were useable by Gravity to fulfill the contract with U.S. Tobacco. Therefore, Farmers argues that the underlying agreement between Gravity and Reece was not fulfilled and that a condition of the guaranty agreement was not fulfilled. Farmers points to the first paragraph of the November 4, 1997, letter and argues that such paragraph clearly contemplates that the guaranty will be for payment for transformers "used to fulfill Gravity's contract with U.S. Tobacco Company." Farmers also asserts that the words "as agreed" in the letter refers to the underlying agreement between Reece and Gravity.

The first paragraph of the letter does not add any terms or conditions to the guaranty agreement set out in the second paragraph of the letter. The first paragraph merely contains a recital of facts identifying the subject matter of the guaranty agreement.

We disagree with Farmers' argument that the words "as agreed" in the November 4, 1997, letter refer to the underlying agreement between Reece and Gravity. The words "as agreed" modify the word "paid" in the guaranty agreement. We agree with Reece's analysis that the language of the guaranty agreement can only have meaning within the four corners of the letter if "as agreed" refers to the amount agreed to by Reece and Gravity for the transformers delivered to Gravity. The guaranty agreement preceded the placing of the orders by Gravity and the delivery of the transformers by Reece. On November 4, 1997, Farmers did not know the number or cost of the transformers that Gravity would order from Reece.

■ The November 4, 1997, letter is unambiguous. The instrument alone will be deemed to express the intention of the parties for it is the objective, not subjective, intent that controls. *City of Pinehurst v. Spooner Addition Water Company,* 432 S.W.2d 515 (Tex.1968). We hold that the guaranty agreement is an unconditional payment guaranty. The conditions urged by Farmers are not available to Farmers.

■ Farmers next asserts failure of consideration. Consideration for a guaranty agreement usually consists of either the sufferance of a detriment by the creditor or a benefit conferred by the creditor on the primary debtor. *Hargis v. Radio Corporation of America, Electronic Components,* 539 S.W.2d 230, 232 (Tex.Civ. App.-Austin 1976, no writ). The consideration was Farmers' promise to pay the amount "as agreed, seven (7) days after shipment" by Reece, Reece's detrimental reliance on Farmers' promise, and Reece's shipping the transformers. See *Gooch v.*

*American Sling Company, Inc.*, 902 S.W.2d 181, 185 (Tex.App.-Fort Worth 1995, no writ.).

Farmers also contends that it is entitled to an offset because Reece repossessed the transformers and because Reece has not accounted for the disposition of the transformers or allowed any credit for the value of the transformers. Farmers was the primary, absolute, unconditional obligor. Therefore, the asserted defenses of offset and failure of consideration because the transformers were unfit are not available to Farmers. See *Houston Sash and Door Company, Inc. v. Heaner*, 577 S.W.2d 217 (Tex.1979); *Universal Metals and Machinery, Inc. v. Bohart, supra.*

The summary judgment proof established that Reece was entitled to judgment as a matter of law. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex. 1970). The judgment of the trial court is affirmed.