

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00289-CV

| | |
|---|---|
| WELLS FARGO BANK, N.A. F/K/A WELLS FARGO BANK MINNESOTA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGES PASS-THROUGH CERTIFICATES, SERIES 2003-PMI, ACTING BY AND THROUGH ORIX CAPITAL MARKETS, LLC | APPELLANT |

V.

| | |
|---|---|
| MBS - THE HILLS, LTD., 3101 W. NORMANDALE, L.L.C., MICHAEL B. SMUCK, AND EDWIN A. WHITE | APPELLEES |

----------

### FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

# I. INTRODUCTION

In two issues, Appellant Wells Fargo Bank, N.A. f/k/a Wells Fargo Bank Minnesota, N.A., as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgages Pass-Through Certificates, Series 2003-PMI, acting by and through ORIX Capital Markets, LLC (collectively Wells Fargo) argues that the trial court erred by interpreting a non-recourse indemnification agreement as an agreement only to indemnify the noteholder against third-party claims and erred by entering judgment that Wells Fargo take nothing as to its claims against Appellees Michael B. Smuck and Edwin A. White. We will affirm.

# II. BACKGROUND

White and Smuck formed MBS - The Hills, Ltd. as a special purpose entity to borrow funds and to purchase and hold title to an apartment property known as "The Hills." Smuck served as director of 3101 W. Normandale, L.L.C., the general partner of MBS - The Hills. MBS - The Hills borrowed $6.8 million through nonrecourse financing, securing the promissory note with the apartment property.[2] The note limited MBS - The Hills's liability to the property pledged as collateral, but the note contained nonrecourse exceptions that would establish both MBS - The Hills and Normandale's liability under certain defined

---

[2]The loan was originally obtained from PNC Bank, National Association, but it was later assigned to Wells Fargo.

2

circumstances. Additionally, the lender required Smuck and White to execute a nonrecourse indemnification agreement, which is the subject of this appeal.

MBS - The Hills defaulted on the note, and Wells Fargo applied to the trial court to appoint a receiver to manage the property. Based on the receiver's assessment of the property, Wells Fargo sued MBS - The Hills and Normandale, seeking to establish their liability under the note's nonrecourse exceptions. Wells Fargo also sued Smuck and White, seeking to establish their personal liability under the nonrecourse indemnification agreement. Wells Fargo alleged that MBS - The Hills and Normandale took unreasonable actions and unreasonably failed to act in managing the property, constituting waste. It also alleged that several liens encumbered the title and impaired the lender's right to foreclose. Proving either of these allegations would establish MBS - The Hills and Normandale's liability under the nonrecourse exceptions contained in the note.

During discovery, Wells Fargo served MBS - The Hills and Normandale with requests for admissions. When MBS - The Hills and Normandale failed to respond to the requests for admissions, Wells Fargo moved for summary judgment against them based on the nonrecourse exceptions contained in the note, requesting that the trial court deem the requests for admissions admitted

under rule of civil procedure 198.2.[3]  The trial court granted an interlocutory summary judgment in favor of Wells Fargo.

Wells Fargo proceeded to trial on its remaining claims against Smuck and White.  After Wells Fargo offered, and the trial court admitted, ten exhibits, Wells Fargo rested without calling any witnesses.  The trial court entered a take-nothing judgment on Wells Fargo's claims against Smuck and White and the following findings of fact and conclusions of law:

> 5.     Defendants MICHAEL B. SMUCK and EDWIN A. WHITE did not, by the *Non-Recourse Indemnification Agreement* of July 16, 2003, or any other instrument presented at trial, guaranty any liability of Defendants MBS—THE HILLS, LTD and/or 3101 W. NORMANDALE, L.L.C.  The agreement was between the defendant individuals and Plaintiff to indemnify Plaintiff, not the defendant business entities, against certain potential liabilities.  The indemnification agreement does not operate as a guaranty of any obligation of the defendant business entities, which were not party to the agreement.

> . . . .

> 6.     At trial, Plaintiff introduced no evidence to establish any liability of either MICHAEL B. SMUCK or EDWIN A. WHITE.  Therefore, Defendants MICHAEL B. SMUCK and EDWIN A. WHITE are not liable to Plaintiff for any damages sustained in connection with the note and attendant security documents.

> 7.     Plaintiff provided no evidence at trial that the losses it sustained fall within any of the carve-out provisions of the promissory note, indemnification agreement, or other loan documents that would make either MICHAEL B. SMUCK or EDWIN

---

[3]MBS-The Hills and Normandale were represented by counsel, but midway through the case, counsel withdrew.  No substitute counsel appeared on their behalf regarding the summary judgment.

A. WHITE liable. For that reason, MICHAEL B. SMUCK and EDWIN A. WHITE are not liable to it for damages that the plaintiff sustained.

Upon Wells Fargo's request, the trial court entered the following additional findings and conclusions regarding MBS -The Hills's and Normandale's liability:

1. On July 16, 2003, MBS-The Hills, Ltd. ("MBS-Hills" or "Borrower") executed a promissory note in favor of [Well Fargo's predecessor] evidencing a $6,800,000.00 loan to purchase the Hills Apartment Homes in Fort Worth, Texas . . . . The parties agreed that the Note would be non-recourse as to the Borrower except and unless certain defined non-recourse exceptions, set forth in paragraph 12 of the Note, were satisfied.

2. Borrower and Normandale are jointly and severally liable under the Note by reason of and through the non-recourse liability exceptions of Paragraph 12 of the Note. Wells Fargo is entitled to recover against Borrower and 3101 W. Normandale, LLC for their recourse liability under the Note.

### III. STANDARD OF REVIEW

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *Dominey v.*

5

*Unknown Heirs & Legal Reps. of Lokomski*, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

## IV. CONSTRUCTION OF THE NONRECOURSE INDEMNIFICATION AGREEMENT

In its first issue, Wells Fargo argues that "the trial court's construction of the hold harmless agreement depends on characterizing the agreement as an agreement to indemnify Wells Fargo against third party liability rather than an agreement to guaranty [MBS - The Hills and Normandale's] personal liability under the Note's non-recourse exceptions." Wells Fargo cites *Joseph Thomas, Inc. v. Graham* for the proposition that we must characterize the nonrecourse indemnification agreement as a guaranty because it is "collateral and secondary to the principal contract that is guaranteed in the secondary contract." 842 S.W.2d 343, 346 (Tex. App.—Tyler 1992, no writ). Appellees argue that this is a "misreading of the case," and they instead cite *Graham* for the proposition that we must characterize the nonrecourse indemnification agreement as an agreement to indemnify because "a promise to protect the promisee is an indemnity contract." White focuses exclusively on the uses and variations of the term "indemnity" throughout the nonrecourse indemnification agreement to support his argument that "a sophisticated lender and servicer of commercial real estate property as well as the sole drafter of all the Loan Documents" should have drafted the non-recourse agreement to be a "guaranty" if it intended the agreement to operate as a guaranty. Smuck contends that under *Graham*, the nonrecourse indemnification agreement does not operate as a guaranty against

6

him and White. According to Smuck, "*Graham* stands for the proposition that a promise to protect a third party is a guaranty, and a promise to protect the promisee is an indemnity contract." Wells Fargo is the promisee on the note.

Historically, an indemnification agreement is a promise "to safeguard or hold harmless the indemnitee against existing or future loss, liability, or both." *Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 144 (Tex. App.—Fort Worth 2010, no pet.) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)). But "[m]agic is not the quality of nomenclature," and simply because a party calls himself a guarantor or an indemnitor "does not inevitably make him one." *Wood v. Canfield Paper Co.*, 117 Tex. 399, 5 S.W.2d 748, 750 (Tex. 1928) (citing *Davis v. Patrick*, 141 U.S. 479, 12 S. Ct. 58 (1891)). Instead, when construing promissory notes, we apply the rules of contract construction. *See Fin. Freedom Senior Funding Corp. v. Horrocks*, 294 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 413 (Tex. App.—Austin 2005, pet. denied)).

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Courts should examine the entire writing "to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* Contact terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense.

7

*Id.* "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served,' and when possible, we will avoid a construction that "is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). We must look at all of the contract's parts together and be "particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). We presume that the parties to a contract intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

The financing granted to MBS - The Hills by Wells Fargo's predecessor-in-interest was nonrecourse. Thus, MBS - The Hills' liability—according to the note—was only extended "to the Mortgaged Property and other collateral given to secure the Debt, and Lender shall not enforce such liability against any other asset, property or funds of Borrower" except under six specified conditions immediately identified in subsections (a)–(f). After listing the six exceptions, the note states the following:

> Items (a) through (f) above are collectively the "Non-Recourse Exceptions". To the extent Borrower is a general partnership and Lender is required under applicable law to pursue its remedies against the persons or entities constituting Borrower, each reference to the phrase "(including Borrower)" in the Non-Recourse Exceptions shall be deemed to read "(including Borrower or any person or entity constituting Borrower)". *Borrower's liability under the Non-Recourse*

8

*Exceptions . . . shall be limited to the amount of any losses or damages sustained by Lender in connection with such Non-Recourse Exceptions.* [Emphasis added.]

The particular business activity sought to be served here is nonrecourse, commercial financing, so we must construe the nonrecourse indemnification agreement in a reasonable and equitable manner in accordance with that purpose. The borrower in this case (MBS - The Hills) was a limited partnership, so only the general partner's liability was at risk. But the general partner (Normandale) was a limited liability corporation, so the entity "constituting Borrower" was another business entity with limited liability. Therefore, Wells Fargo's predecessor-in-interest required that Smuck and White sign the nonrecourse indemnification agreement, intending to have recourse against Smuck and White if the nonrecourse exceptions under the note were triggered. Specifically, the nonrecourse indemnification agreement limits Smuck's and White's personal liability to that "which Borrower at any time may be personally liable pursuant to the non-recourse exceptions (as defined in paragraph 12 of the note)."

Accordingly, the note limits the lender's recourse to the collateral used to secure the debt, but under six circumstances, the lender has recourse against MBS - The Hills and Normandale for "the amount of any losses or damages sustained by Lender *in connection with such Non-Recourse Exceptions*." [Emphasis added.] This means that Wells Fargo may obtain a judgment against MBS - The Hills and Normandale for damages resulting from, among other

9

things, waste. The note *does not* give Wells Fargo *full recourse* against MBS - The Hills and Normandale for the entire amount, if any, due and owing under the note in the event MBS - The Hills and Normandale's liability is established under one or more of the nonrecourse exceptions. In other words, waste triggers liability for damages resulting from waste; waste does not trigger liability for damages equaling amounts remaining due and owing on the note.

Considering the nonrecourse indemnification agreement's limiting Smuck and White's personal liability to that "which Borrower at any time may be personally liable pursuant to the non-recourse exceptions," the nonrecourse indemnification agreement therefore gives Wells Fargo recourse against Smuck and White for "the amount of any losses or damages sustained by the lender *in connection with such Non-Recourse Exceptions*." [Emphasis added.] As with MBS - The Hills under the note, the nonrecourse indemnification agreement does not give Wells Fargo full recourse against Smuck and White for the entire amount, if any, due and owing under the note in the event MBS - The Hills and Normandale's liability is triggered under one or more of the nonrecourse exceptions. We hold that the evidence supports the trial court's finding that the nonrecourse indemnification agreement did not operate as a guaranty of any obligation of MBS - The Hills and Normandale. We overrule Wells Fargo's first issue.

### V. PERSONAL LIABILITY OF SMUCK AND WHITE

10

In its second issue, Wells Fargo argues that Smuck and White's personal liability is conditioned on the liability of MBS - The Hills and Normandale, so by establishing MBS - The Hills and Normandale's liability, Wells Fargo established Smuck and White's personal liability.

Wells Fargo argued in its motion for interlocutory summary judgment that it had properly served requests for admissions on MBS - The Hills and Normandale, that MBS - The Hills and Normandale had failed to respond to the requests for admissions, that the failure to respond resulted in the matters being deemed admitted as a matter of law, and that the deemed admissions constituted competent summary judgment evidence against MBS - The Hills and Normandale. Several of the requests for admissions included the following:

5. Borrower committed waste with respect to the Property.

6. Normandale committed waste with respect to the Property.

. . . .

8. Property was foreclosed upon on June 10, 2008.

9. **The net proceeds of the foreclosure sale of the Property resulted in a deficiency amount of at least $5,214,572, exclusive of the accrued interest.**

[Emphasis added.]

In light of the deemed requests for admissions, Wells Fargo argued that MBS -The Hills and Normandale had committed waste and that the commission of waste therefore "trigger[ed] *full recourse liability* under section 12(a) of the Note." [Emphasis added.] Indeed, according to Wells Fargo, it claimed to be

11

"entitled to summary judgment on its claims against [MBS - The Hills and Normandale] for *the full recourse balance of the Note*."  [Emphasis added.] Sustaining Wells Fargo's argument, the trial court granted summary judgment for Wells Fargo and awarded it $5,904,537.61, an amount representing the *deficiency* owed on the note as of December 2008—not an amount representing damages for waste.[4]

Later, at the final trial on Wells Fargo's claims against Smuck and White, Wells Fargo offered several exhibits into evidence, including the note and the nonrecourse indemnification agreement, and rested.  Wells Fargo did not offer any testimony or evidence of any amounts of damages resulting from waste.

The record is clear.  The judgment that Wells Fargo obtained against MBS - The Hills and Normandale was not for damages resulting from waste, as the note unambiguously contemplates.  Instead, Wells Fargo obtained a deficiency judgment representing the amount owed on the note as of December 2008.  Wells Fargo did not offer any evidence of damages resulting from waste either as part of its summary judgment evidence or at the final trial against Smuck and White.[5]  Consequently, because the nonrecourse indemnification

---

[4]The dissent's contention that the trial court's order awarding Wells Fargo $5,904,537.61 "set the amount of damages *in connection with [the nonrecourse] exceptions*" is simply incorrect.  Dissent op. at 7.  [Emphasis added.]

[5]Wells Fargo included the affidavits of Charles Crouch and Bruce Woodward as part of its summary judgment evidence, but neither affidavit addressed damages for waste.

12

agreement limits Smuck and White's personal liability to MBS - The Hills and Normandale's liability under the nonrecourse exceptions; because Wells Fargo obtained a deficiency judgment against MBS - The Hills and Normandale on account of their commission of waste instead of a judgment for damages caused by waste; and because Wells Fargo offered no evidence at trial of any damages resulting from MBS - The Hills and Normandale's waste, the trial court's challenged conclusions are not erroneous.

The dissent cites *White v. MLMT 2004-BPC1 Carlyle Crossing, LLC*, to support its contention that the note should be construed as a guarantee, but *White* actually demonstrates precisely why Wells Fargo is not entitled to recover from Appellees. *See* No. 02-10-00233-CV, 2011 WL 3672022, at *6 (Tex. App.—Fort Worth Aug. 18, 2011, pet. denied) (mem. op.). In *White*, the appellee sued MBS - Carlyle Crossing, Smuck, and White under the $5.5 million promissory note and the nonrecourse indemnification agreement. *Id.* at *1. The trial court rendered a judgment in favor of MLMT for $1,766,355.52 for damages resulting from waste, and this court reviewed the legal and factual sufficiency of the evidence to support that award. *Id.* at *1–6. Unlike in this case, the noteholder presented evidence and proved damages attributable to waste.

Although Wells Fargo proved as a matter of law that MBS - The Hills and Normandale committed waste, there is no evidence in the record of the amount of any losses or damages that Wells Fargo sustained in connection with MBS -

13

The Hills and Normandale's commission of waste. Accordingly, we overrule Wells Fargo's second issue.

## VI. CONCLUSION

Having overruled both of Wells Fargo's issues, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

GABRIEL, J. filed a dissenting opinion.

DELIVERED: December 8, 2011



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00289-CV

| | |
|---|---|
| WELLS FARGO BANK, N.A. F/K/A WELLS FARGO BANK MINNESOTA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGES PASS-THROUGH CERTIFICATES, SERIES 2003-PMI, ACTING BY AND THROUGH ORIX CAPITAL MARKETS, LLC | APPELLANT |

V.

| | |
|---|---|
| MBS - THE HILLS, LTD., 3101 W. NORMANDALE, L.L.C., MICHAEL B. SMUCK, AND EDWIN A. WHITE | APPELLEES |

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING MEMORANDUM OPINION[1]

----------

---

[1]See Tex. R. App. P. 47.4.

I respectfully dissent from the majority's holding that Wells Fargo's agreement with Smuck and White is not a guaranty and that Smuck and White are not liable for the judgment against MBS - The Hills and Normandale (the Borrowers).

## I. THE INDEMNITY AGREEMENT FUNCTIONS AS A GUARANTY.

As the majority explained, MBS - The Hills is a limited partnership, and its general partner Normandale is a limited liability company. Wells Fargo required Smuck and White to sign the indemnification agreement so that it would have an avenue to recoup its investment should the nonrecourse exceptions be triggered.[2] Indeed, the indemnification agreement states, "As a condition to making the Loan, Lender has required that Indemnitor indemnify Lender with respect to the matters set forth herein." When we construe the agreement, we are required to bear that intention in mind. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument.").

When the exceptions were triggered, the Borrowers became liable under the note for "the amount of any losses or damages sustained by [Wells Fargo] in connection with" the exceptions. When the Borrowers became liable under the note, Smuck and White became liable under the indemnity agreement. The

_____

[2]The majority opinion recognizes the intent of the parties by stating, "Wells Fargo's predecessor-in-interest required that Smuck and White sign the nonrecourse indemnification agreement, intending to have recourse against Smuck and White if the nonrecourse exceptions under the note were triggered." Majority Op. at 9.

2

agreement, although styled as an indemnity agreement, essentially "functioned as a guarantee that if [MBS - The Hills] did not make good on any obligation for which it was liable under recourse provisions of the note . . . , [Smuck and White] would make good on them." *White v. MLMT 2004-BCP1 Carlyle Crossing, LLC*, No. 02-10-00233-CV, 2011 WL 3672022, *6 (Tex. App.—Fort Worth Aug. 18, 2011, pet. denied) (mem. op.) (construing a nearly identical indemnity agreement);[3] *see also Farmers & Merchs. State Bank of Krum*, 79 S.W.3d 615, 617 (Tex. App.—Eastland 2002, pet. denied) (quoting *Bohart v. Universal Metals and Machinery, Inc.*, 523 S.W.2d 279, 288–90 (Tex. Civ. App.—Dallas 1975) (Guittard, J., dissenting), *rev'd*, 539 S.W.2d 874 (Tex. 1976)) ("A 'guaranty' is a [species] of indemnity contract. It is a promise to stand responsible for occurrence of an event that may not be directly within the control of the immediate parties of the contract.").

Paragraph 2 of the agreement states, in whole,

> 2. Indemnity. INDEMNITOR HEREBY ASSUMES LIABILITY FOR AND AGREES TO PAY, PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS LENDER . . . FROM AND AGAINST ANY AND ALL LIABILITIES, OBLIGATIONS, LOSSES, DAMAGES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES), CAUSES OF ACTION, SUITS, CLAIMS, DEMANDS AND JUDGMENTS WHICH AT ANY TIME MAY BE IMPOSED UPON, INCURRED BY OR AWARDED AGAINST LENDER AND FOR WHICH BORROWER AT ANY TIME MAY BE PERSONALLY

---

[3]The majority claims that *White* is inapposite to this case because the trial court in *White* did not award a deficiency judgment, as the majority claims the trial court did in this case. As discussed below, the trial court here did not grant a deficiency judgment. Regardless, we cite *White* here for the proposition that the indemnity agreement in that case "functioned as a guarantee," precisely as the agreement functions in this case. That proposition is relevant whether the judgment in this case is a deficiency judgment or not.

LIABLE PURSUANT TO THE NON-RECOURSE EXCEPTIONS (AS DEFINED IN PARAGRAPH 12 OF THE NOTE). EACH PERSON OR PARTY EXECUTING THIS INDEMNITY AGREES THAT THE LIABILITY HEREUNDER SHALL BE JOINT AND SEVERAL.

Smuck argues that the language "judgments which at any time may be imposed upon, incurred by or awarded against Lender and for which Borrower at any time may be personally liable" requires Smuck and White to assume liability only for obligations for which Wells Fargo would be liable to a third party based on MBS - The Hills's violation of the nonrecourse exceptions. This is far too narrow a reading and makes little sense in light of the reason why Wells Fargo required the agreement. *See Coker*, 650 S.W.2d at 393 (noting that to achieve the objective of ascertaining the parties' intentions, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless"). Paragraph 2 protects against much more than just claims against Wells Fargo for the Borrowers' actions. It also offers coverage for "any and all liabilities, obligations, losses, damages, costs and expenses . . . incurred by . . . Lender" as the result of the nonrecourse exceptions, which was the case here.

While an indemnity agreement protects against actions by third parties, *Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 144 (Tex. App.—Fort Worth 2010, no pet.) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)) (noting that an indemnity contract "obligates the indemnitor to protect the indemnitee against liability claims of persons not a party to the agreement"), the agreement between Smuck and White and Wells Fargo protects against more than that. Further, it is clear from the language of the agreement that the parties intended the agreement not to stand alone like a

4

traditional indemnity agreement but to be "collateral and secondary to the principal contract that is guaranteed in the secondary contract" like a guaranty. *Joseph Thomas, Inc. v. Graham*, 842 S.W.2d 343, 346 (Tex. App.—Tyler 1992, no writ). For these reasons, I believe the contract should be construed as functioning as a guaranty of payment if the nonrecourse exceptions were violated. *See White*, 2011 WL 3672022, at *6.

## II. THE JUDGMENT AGAINST THE BORROWERS WAS NOT A DEFICIENCY JUDGMENT.

The Borrowers were served with requests for admissions and each failed to respond. As a result, the following requests were deemed admitted:

**REQUEST FOR ADMISSION NO. 3:**
Admit that [MBS - The Hills] took unreasonable actions and unreasonably failed to act in its management of the Property.

**REQUEST FOR ADMISSION NO. 4:**
Admit that Normandale took unreasonable actions and unreasonably failed to act in its management of the Property.

**REQUEST FOR ADMISSION NO. 5:**
Admit that [MBS - The Hills] committed waste with respect to the Property.

**REQUEST FOR ADMISSION NO. 6:**
Admit that Normandale committed waste with respect to the Property.

. . . .

**REQUEST FOR ADMISSION NO. 13:**
Admit that under the Note, [MBS - The Hills] agreed that impairing the rights of [Wells Fargo] to foreclose on the Deed of Trust and obtain title to the Property would be excepted from the otherwise non-recourse nature of the Note.

**REQUEST FOR ADMISSION NO. 14:**
Admit that liens remain on the Property after the foreclosure sale of the Property.

5

. . . .

**REQUEST FOR ADMISSION NO. 16:**
Admit that allowing the liens to remain on the Property triggered full recourse liability for [MBS - The Hills].

**REQUEST FOR ADMISSION NO. 17:**
Admit that commission of waste on the Property triggered full recourse liability for [MBS - The Hills].

**REQUEST FOR ADMISSION NO. 18:**
Admit that [MBS - The Hills] and Normandale are jointly and severally liable under the Note for all losses and damages resulting from waste committed on the Property.

. . . .

**REQUEST FOR ADMISSION NO. 20:**
Admit that [MBS - The Hills] and Normandale are jointly and severally liable under the Note for all losses and damages from [MBS - The Hills]'s failure to clear the liens that impaired [Wells Fargo]'s right to foreclose on the Property.

The deemed admissions establish that the nonrecourse exceptions had been violated. *See Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 838 (Tex. App.—Dallas 2009, no pet.) ("Deemed admissions may be employed as proof, and once admissions are deemed admitted by operation of law and where the admissions fully support each element of a cause of action, including damages, they will fully support a judgment based thereon."). Wells Fargo provided competent summary judgment evidence in the form of deemed admissions proving that the Borrowers committed waste on the property and that liens remain on the property, both of which triggered the Borrowers' personal liability under the nonrecourse exceptions.

6

The Borrowers' liability under the nonrecourse exceptions was limited to "the amount of any losses or damages sustained by Lender in connection with such Non-Recourse Exceptions." However, the Borrowers were deemed to have admitted that they were liable for the full balance of the note. In its motion for summary judgment, Wells Fargo argued in essence that its damages resulting from the Borrowers' violations of the nonrecourse exceptions equaled the balance of the note. The Borrowers did not file a response to the motion or otherwise argue that they were liable for any lesser amount. The trial court granted summary judgment against the Borrowers and awarded Wells Fargo the full $5,904,537.61 that it sought.

The trial court's order set the amount of damages in connection with the violation of the nonrecourse exceptions as a matter of law. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (noting that a movant meets the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law). The trial court specifically found in the Additional Findings of Fact and Conclusions of Law that the Borrowers are jointly and severally liable through the nonrecourse liability exceptions. The trial court obviously understood that Wells Fargo was not seeking, nor entitled to, a deficiency judgment but was only entitled to recover under the defined nonrecourse exceptions.[4]

---

[4]Even Smuck recognizes that the court's judgment was not a deficiency judgment but instead "[t]he Interlocutory Judgment against [MBS-The Hills] was

7

The majority seems to say that because the damages amount equaled the balance of the note, Wells Fargo received a deficiency judgment, and thus Smuck and White cannot be held liable for the damages. The majority says that the trial court's award of $5,904,537.61 represents the "*deficiency* owed on the note as of December 2008—not an amount representing damages for waste." Majority Op. at 12. The trial court's judgment says nothing about a deficiency judgment. Wells Fargo never made a claim for a deficiency judgment, either in its supplemental petition or in its motion for interlocutory summary judgment, which is the basis for the trial court's interlocutory summary judgment. In fact, in its motion for interlocutory summary judgment, Wells Fargo notes,

> Although Wells Fargo meets the elements for recovery under a promissory note . . . , the obligations of [the Borrowers] are generally non-recourse unless certain exceptions exist. Exceptions do exist, and [the Borrowers, Smuck, and White] are jointly and severally liable for the losses, damages and expenses incurred by Wells Fargo pursuant to Sections 12(a) and 12(b) of the Note for:
> (a) Waste; and
> (b) Impairment of [Wells Fargo's] right to foreclose on the Property.

The trial court's judgment must conform to the pleadings. Tex. R. Civ. P. 301; *see Khalaf v. Williams*, 814 S.W.2d 854, 858 (Tex. App.—Houston [1st Dist.] 1991, no writ). It is clear from its motion for interlocutory summary

for waste damages caused [to] Wells Fargo by [MBS-The Hills] . . . ." White is the only party to this litigation who argues that the interlocutory summary judgment order granted a deficiency judgment. He states that the trial court's summary judgment order did not specify that waste had occurred. His argument is defeated however by the trial court's specific finding of October 20, 2010 that "[the Borrowers] are jointly and severally liable under the Note by reason of and through the non-recourse liability exceptions . . . ." The trial court was explicit and simply calling it a deficiency judgment does not make it so.

judgment that Wells Fargo knew that it had contracted away its right to sue for a deficiency judgment. Wells Fargo also knew that it retained the right to seek recovery under the nonrecourse exceptions if they were triggered. Wells Fargo did not and could not receive a deficiency judgment. Therefore, the amount of the damages award, regardless of whether it equaled the balance of the note, could only be damages for Wells Fargo's cause of action against the Borrowers for their violation of the nonrecourse exceptions as proven by the deemed admissions.

If the majority's complaint is about of the adequacy of the evidence to support the amount of damages Wells Fargo incurred in connection with the nonrecourse exceptions, I note that the interlocutory summary judgment that allegedly incorrectly found the evidence sufficient is not before us. The only issues presented for our review involve that part of the amended final judgment of July 15, 2010, regarding the claims against Smuck and White. It is immaterial to the issue of Smuck and White's liability that the award against the Borrowers equaled the balance on the note. The amount of the interlocutory summary judgment award has not been challenged, and we are not to examine whether it was a correct or fair amount. If Wells Fargo was awarded more than it should have been, that is the risk the guarantors took when they agreed to guaranty another's obligation. Smuck and White agreed to pay for the damages Wells Fargo suffered as a result of the nonrecourse exceptions, and they are liable for the amount that was awarded.

9

The interlocutory summary judgment was not based on the Borrowers' failure to pay the note; it was based on the Borrowers' waste. The indemnification agreement makes the indemnitor's liability co-extensive to that of Borrowers' personal liability under the nonrecourse exceptions. The Borrowers were found to have violated the nonrecourse exceptions, triggering their personal liability. Because the indemnity agreement functions as a guaranty, I would hold Smuck and White liable to Wells Fargo for the unchallenged damages award.

LEE GABRIEL
JUSTICE

DELIVERED: December 8, 2011