

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-352-CV

NATIONAL CITY MORTGAGE COMPANY          APPELLANT

V.

CAROLYN A. ADAMS          APPELLEE

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REHEARING

------------

## I. Introduction

In one issue, Appellant National City Mortgage Company ("NCM") asserts that the trial court erred by failing to enter a judgment awarding NCM its attorneys' fees. While we deny NCM's motion for rehearing, we withdraw our earlier opinion and judgment of February 25, 2010, and substitute the following. We affirm.

## II. Factual and Procedural History

In March 2003, Appellee Carolyn A. Adams contracted with Steve Paulsen Properties, Ltd. for the construction of a new home. In April 2003, she obtained financing for the construction through NCM, executing a Construction/Permanent Loan Agreement (the "Loan Agreement"), a Promissory Note (the "Note") in the amount of $202,800, and a Disbursement Authorization form, which allowed NCM to disburse funds to Paulsen upon NCM's receipt of either a written or verbal draw request from Paulsen or Carolyn.

On September 12, 2003, Carolyn's son, Murray Adams, met with Paulsen to discuss the completion date of Carolyn's house. During the conversation, Paulsen advised Murray that there had been some delays but that he intended to personally supervise the job from that point on. Two days later, during a telephone conversation with Paulsen, Murray claimed that Paulsen quit the job and told Murray to contact a lawyer. Paulsen, on the other hand, claimed that he only told Murray that he was not going to complete the job because Murray had threatened to kill him.

On September 15, 2003, Murray called NCM's home office in Ohio and spoke with Charles Dixon about Paulsen quitting the job. Dixon allegedly confirmed that there were no draws pending at that time and that NCM would

2

no longer honor Paulsen's draw requests. Dixon also instructed Murray to have Carolyn contact NCM's Southlake office and inform someone there that Paulsen had quit the job. The next morning, Carolyn called the Southlake office and spoke with Bonnie Doran, the district manager. Carolyn informed Doran that Paulsen had quit the job and that NCM should no longer honor Paulsen's draw requests.

On September 17, 2003, Paulsen submitted a request for disbursement to NCM in the amount of $33,320. On September 18, 2003, Larry Bracken, Carolyn's attorney, faxed a letter to Paulsen and to NCM's Southlake office instructing NCM that no more payments were to be made to Paulsen and requesting that Paulsen or another builder complete the construction by October 14, 2003, or that other accommodations be made. On that same day, NCM paid Paulsen the $33,320 he had requested the day before.

Subsequently, Carolyn sued NCM for declaratory relief, breach of contract, deceptive trade practices, conspiracy, common law unreasonable collection efforts, and violation of the Texas Debt Collection Practices Act ("TDCPA"). NCM filed a counter-claim for contractual indemnity. At trial, the only claims against NCM submitted to the jury were breach of contract and purported violations of the TDCPA.

After a trial on the merits, the jury found that: (1) NCM did not breach the Loan Agreement with Carolyn, (2) NCM did not violate the TDCPA, and (3) Carolyn was not entitled to attorney's fees against NCM. The jury also found that a reasonable and necessary fee for the services of NCM's attorneys was $174,500.

On March 7, 2008, NCM and Paulsen filed a joint motion for entry of judgment consistent with the jury's verdict. Thereafter, Carolyn filed a motion for judgment notwithstanding the verdict ("JNOV") and a response and objection to NCM and Paulsen's motion for entry of judgment. In her motion, Carolyn asserted ten grounds on which the trial court should disregard the jury's verdict and enter a take nothing judgment. Of those ten grounds, only four were applicable to NCM: 1) the jury's answer to jury question number one[1] should be disregarded because the answer "yes" was marked out and "no" was written beside it with scribbled initials; 2) the jury's answer to jury question number twenty[2] should be disregarded because jury question number one was conflicting, incomplete, and unresponsive; 3) the jury's answer to jury

---

[1] ... Jury question number one asked, "Did [NCM] fail to comply with terms of the Construction/Permanent Loan Agreement?"

[2] ... Jury question number twenty asked, "What is a reasonable fee for the necessary services of [NCM's] attorneys in this case, stated in dollars and cents?"

question number twenty should be disregarded because there was legally and factually insufficient evidence to warrant the submission of question number twenty; and 4) the jury's answers to jury questions one through twenty should be disregarded because the trial court erroneously instructed the jury concerning the dollar amount of Carolyn's contractual damage claim; thereby, commenting on the weight of the evidence.

On June 5, 2008, the trial court entered a judgment that all parties take nothing by way of their claims, with court costs to be taxed against Carolyn. One week later, the trial court entered an order denying NCM and Paulsen's joint motion for entry of judgment. Subsequently, NCM filed a motion to alter, modify, or amend judgment, arguing that, as a matter of law, NCM was entitled to recover all of its attorneys' fees. NCM's motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). This appeal followed.

## III. Discussion

In its sole issue, NCM argues that the trial court abused its discretion because the award of attorneys' fees to NCM was mandatory under the Loan Agreement and Texas law. In response, Carolyn asserts that this court must affirm the trial court's denial of attorneys' fees because NCM appeals from a JNOV and NCM failed to challenge all the grounds upon which the trial court

5

could have entered a JNOV.  This case, however, is procedurally awkward in that it does not fit within the traditional standard of review for JNOV.[3]

Here, NCM does not challenge the trial court's setting aside of the jury verdict and entering a judgment in conflict with that verdict—a challenge requiring this court to look at the jury's findings.  Instead, NCM complains about the trial court's failure to determine, as a matter of law, that NCM was entitled to attorneys' fees—a legal issue, requiring no inquiry into the jury's findings.  *See Holland v. Wal-Mart Stores*, 1 S.W.3d 91, 94 (Tex. 1999) (holding that the determination of whether attorneys' fees are available in a particular case is a question of law, which is reviewed by this court under the de novo standard).  Thus, the JNOV standard is inapplicable.

A trial court's determination of whether to award attorneys' fees is reviewed for abuse of discretion.  *See Armstrong v. Steppes Apartments, Ltd.*, 57 S.W.3d 37, 50 (Tex. App.—Fort Worth 2001, pet. denied), *cert. denied*,

---

[3]... A trial court may disregard a jury verdict and render judgment notwithstanding the verdict ("JNOV") if no evidence supports the jury's findings on issues necessary to liability or if a directed verdict would have been proper.  *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex. 1991).  In determining whether the trial court erred by rendering a JNOV, we view the evidence in the light most favorable to the verdict under the well-settled standards that govern legal sufficiency review.  *See Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).

536 U.S. 951 (2002).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).  A trial court has no discretion in determining what the law is or applying the law to the facts.  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).  A trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion.  *Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001) (orig. proceeding); *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996) (orig. proceeding).

Generally, a party may not recover attorneys' fees unless such an award is authorized by statute or contract.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006); *GXG, Inc. v. Texacal Oil & Gas*, 977 S.W.2d 403, 424 (Tex. App.—Corpus Christi 1998, pet. denied).  NCM asserts that the Loan Agreement between itself and Carolyn is a contract that contains language making the award of attorneys' fees to NCM mandatory.  The language at issue provides:

> (xvii)  That [NCM] will be reimbursed for all expenses of any kind, including without limitation attorney's fees, that

may be incurred by [NCM] in connection with or arising out of this agreement . . .[4]

(xviii) [CAROLYN] AGREES THAT [NCM] AND ITS AGENTS AND ATTORNEYS WILL BE INDEMNIFIED AND HELD HARMLESS FROM ANY AND ALL ACTIONS, CLAIMS, DEMANDS, DAMAGES, COSTS, EXPENSES, AND OTHER LIABILITIES, INCLUDING WITHOUT

---

[4] Although the record reflects that NCM used language from this reimbursement provision in its petition, NCM did not plead reimbursement of its attorneys' fees but, instead, pleaded contractual indemnity. Specifically, NCM pleaded

COUNT 1-CONTRACTUAL INDEMNITY

9. NCM incorporates paragraphs 1 through 8 as is set forth herein fully verbatim. [Paragraphs 1 through 8 set forth the factual and procedural background of the case.]

10. Adams agreed to indemnify and hold NCM harmless from any and all claims arising out of the Loan Agreement. The claims which are the subject matter of this lawsuit arise out of the Loan Agreement. NCM has been forced to incur attorney[s'] fees, costs, and other expenses to defend this lawsuit.

11. Adams's conduct has, therefore, proximately caused damage to NCM in an amount in excess of the minimum jurisdictional limit of the Court.

NCM concluded by asking the trial court to enter a judgment in its favor for, among other things, reasonable and necessary attorneys' fees. Because NCM pleaded only contractual indemnity for its attorneys' fees, it is not entitled to an award of attorneys' fees under the Loan Agreement's reimbursement provision. *See Smith v. Deneve*, 285 S.W.3d 904, 916 (Tex. App.—Dallas 2009, no pet.) ("[W]hen a party pleads a specific ground for recovery of attorney's fees, the party is limited to that ground and cannot recover attorney's fees on another, unpleaded ground.").

8

LIMITATION ATTORNEY'S FEES, THAT ANY SUCH PARTIES MAY INCUR OR THAT IN ANY WAY RELATE TO OR ARISE OUT OF THE CONSTRUCTION OF THE IMPROVEMENTS, INCLUDING WITHOUT LIMITATION THOSE ARISING OUT OF THE NEGLIGENCE OF [NCM].[5] [Emphasis in original.]

When, as here, we construe a written contract, we "ascertain the true intent of the parties as expressed in the instrument." *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). In deciding whether a contract is ambiguous, we consider the written instrument as a whole and determine if it is subject to more than one reasonable interpretation in light of the circumstances present at the time of its formation. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). If the contract can be given a certain or definite legal meaning, it is not ambiguous and should be construed as a matter of law. *Id.*; *CBI Indus.*, 907 S.W.2d at 520.

The provision of the Loan Agreement under (xviii) is clearly one of indemnity, and neither party argues otherwise. An indemnity agreement arises from a promise by the indemnitor to safeguard or hold harmless the indemnitee against existing or future loss, liability, or both. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993), *rev'd on other*

---

[5] For convenience, we have substituted "NCM" for "Lender" and "Carolyn" for "Borrower" in the quoted version of the Loan Agreement's provision.

9

*grounds*, 853 S.W.2d 505 (Tex. 1993); *Wallerstein v. Spirt*, 8 S.W.3d 774, 779 (Tex. App.—Austin 1999, no pet.); *Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. App.— Houston [14th Dist.] 1992, no writ). Such is the plain intent of the quoted language of the Loan Agreement.

That being said, a defining characteristic of an indemnity agreement is that it "does not apply to claims between the parties to the agreement." *Wallerstein*, 8 S.W.3d at 780 (citing *Derr Constr.*, 846 S.W.2d at 858). "[A] contract of indemnity does not relate to liability claims between the parties to the agreement but, of necessity, obligates the indemnitor to protect the indemnitee against liability claims of persons not a party to the agreement." *Dresser Indus., Inc.*, 821 S.W.2d at 362–63.

Thus, because both NCM and Carolyn are parties to the indemnity agreement, the agreement, as a matter of law, does not obligate Carolyn to pay NCM its attorneys' fees incurred in defending itself against Carolyn's claims and in prosecuting its counterclaim against Carolyn. *See MRO Southwest, Inc. v. Target Corp.*, 2007 WL 4403912, at *3 (Tex. App.—San Antonio Dec.19, 2007, pet. denied) (mem. op., not designated for publication) (holding defendant could not recover attorneys' fees incurred in defending the suit based on indemnity provision because the provision did not apply to claims between the parties to the agreement); *see also Baird v. Lease Acquisition Partners, Inc.*,

No. 03-99-00773-CV, 2000 WL 1508263, at *4 (Tex. App.—Austin Oct. 12, 2000, no pet.) (not designated for publication) (concluding the same based on similar indemnity provision).  Consequently, the trial court did not abuse its discretion by refusing to award NCM its attorneys' fees under the Loan Agreement and Texas law.  Accordingly, we overrule NCM's sole issue.

## IV.  Conclusion

Having overruled NCM's sole issue, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON and MCCOY, JJ.

DELIVERED: March 25, 2010