02-10-289-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00289-CV

 

 


 
 
 Wells Fargo Bank, N.A. f/k/a Wells Fargo Bank
 Minnesota, N.A., as Trustee for The Registered Holders of J.P. Morgan Chase
 Commercial Mortgage Securities Corp., Commercial MORTGAGES Pass-Through
 Certificates, Series 2003-PMI, ACTING BY AND THROUGH ORIX CAPITAL MARKETS,
 LLC
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 MBS - The Hills, Ltd., 3101 W.
 Normandale, L.L.C., Michael B. Smuck, and Edwin A. White
 
 
  
 
 
 APPELLEES
 
 
 
 
 
 
 
 


 

 

----------

FROM THE 17th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          In
two issues, Appellant Wells Fargo Bank, N.A. f/k/a Wells Fargo Bank Minnesota,
N.A., as Trustee for the Registered Holders of J.P. Morgan Chase Commercial
Mortgage Securities Corp., Commercial Mortgages Pass-Through Certificates,
Series 2003-PMI, acting by and through ORIX Capital Markets, LLC (collectively Wells
Fargo) argues that the trial court erred by interpreting a non-recourse indemnification
agreement as an agreement only to indemnify the noteholder against third-party
claims and erred by entering judgment that Wells Fargo take nothing as to its claims
against Appellees Michael B. Smuck and Edwin A. White.  We will affirm.

II.  Background

          White
and Smuck formed MBS - The Hills, Ltd. as a special purpose entity to
borrow funds and to purchase and hold title to an apartment property known as
“The Hills.”  Smuck served as director of 3101 W. Normandale, L.L.C., the
general partner of MBS - The Hills.  MBS - The Hills
borrowed $6.8 million through nonrecourse financing, securing the promissory note
with the apartment property.[2]  The note limited MBS - The
Hills’s liability to the property pledged as collateral, but the note contained
nonrecourse exceptions that would establish both MBS - The Hills and
Normandale’s liability under certain defined circumstances.  Additionally, the
lender required Smuck and White to execute a nonrecourse indemnification agreement,
which is the subject of this appeal.

          MBS - The
Hills defaulted on the note, and Wells Fargo applied to the trial court to
appoint a receiver to manage the property.  Based on the receiver’s assessment
of the property, Wells Fargo sued MBS - The Hills and Normandale,
seeking to establish their liability under the note’s nonrecourse exceptions.  Wells
Fargo also sued Smuck and White, seeking to establish their personal liability
under the nonrecourse indemnification agreement.  Wells Fargo alleged that MBS - The
Hills and Normandale took unreasonable actions and unreasonably failed to act
in managing the property, constituting waste.  It also alleged that several
liens encumbered the title and impaired the lender’s right to foreclose. 
Proving either of these allegations would establish MBS - The Hills
and Normandale’s liability under the nonrecourse exceptions contained in the
note.

          During
discovery, Wells Fargo served MBS - The Hills and Normandale with
requests for admissions.  When MBS - The Hills and Normandale failed
to respond to the requests for admissions, Wells Fargo moved for summary
judgment against them based on the nonrecourse exceptions contained in the note,
requesting that the trial court deem the requests for admissions admitted under
rule of civil procedure 198.2.[3]  The trial court granted
an interlocutory summary judgment in favor of Wells Fargo.

          Wells
Fargo proceeded to trial on its remaining claims against Smuck and White.  After
Wells Fargo offered, and the trial court admitted, ten exhibits, Wells Fargo
rested without calling any witnesses.  The trial court entered a take-nothing
judgment on Wells Fargo’s claims against Smuck and White and the following
findings of fact and conclusions of law:

          5.       Defendants
MICHAEL B. SMUCK and EDWIN A. WHITE did not, by the Non-Recourse
Indemnification Agreement of July 16, 2003, or any other instrument
presented at trial, guaranty any liability of Defendants Mbs—The Hills, Ltd and/or 3101 W. Normandale, L.L.C.  The
agreement was between the defendant individuals and Plaintiff to indemnify
Plaintiff, not the defendant business entities, against certain potential liabilities. 
The indemnification agreement does not operate as a guaranty of any obligation
of the defendant business entities, which were not party to the agreement.

 

          . . . .

 

          6.       At
trial, Plaintiff introduced no evidence to establish any liability of either MICHAEL
B. SMUCK or EDWIN A. WHITE.  Therefore, Defendants MICHAEL B. SMUCK and EDWIN
A. WHITE are not liable to Plaintiff for any damages sustained in connection
with the note and attendant security documents.

 

          7.       Plaintiff
provided no evidence at trial that the losses it sustained fall within any of
the carve-out provisions of the promissory note, indemnification agreement, or
other loan documents that would make either MICHAEL B. SMUCK or EDWIN A. WHITE
liable.  For that reason, MICHAEL B. SMUCK and EDWIN A. WHITE are not liable to
it for damages that the plaintiff sustained.

Upon
Wells Fargo’s request, the trial court entered the following additional
findings and conclusions regarding MBS -The Hills’s and Normandale’s
liability:

1.           
On
July 16, 2003, MBS-The Hills, Ltd. (“MBS-Hills” or “Borrower”) executed a
promissory note in favor of [Well Fargo’s predecessor] evidencing a
$6,800,000.00 loan to purchase the Hills Apartment Homes in Fort Worth, Texas . . . . 
The parties agreed that the Note would be non-recourse as to the Borrower
except and unless certain defined non-recourse exceptions, set forth in
paragraph 12 of the Note, were satisfied.

 

2.           
Borrower
and Normandale are jointly and severally liable under the Note by reason of and
through the non-recourse liability exceptions of Paragraph 12 of the Note. 
Wells Fargo is entitled to recover against Borrower and 3101 W. Normandale, LLC
for their recourse liability under the Note.

III.  Standard
of Review

          Findings
of fact entered in a case tried to the court have the same force and dignity as
a jury’s answers to jury questions.  Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are
reviewable for legal and factual sufficiency of the evidence to support them by
the same standards that are applied in reviewing evidence supporting a jury’s
answer.  Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v.
Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  Conclusions of law may not be
challenged for factual sufficiency, but they may be reviewed to determine their
correctness based upon the facts.  AMX Enters., L.L.P. v. Master Realty
Corp., 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on
reh’g); Dominey v. Unknown Heirs & Legal Reps. of Lokomski, 172
S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

IV.  Construction
of the Nonrecourse Indemnification
Agreement

          In
its first issue, Wells Fargo argues that “the trial court’s construction of the
hold harmless agreement depends on characterizing the agreement as an agreement
to indemnify Wells Fargo against third party liability rather than an agreement
to guaranty [MBS - The Hills and Normandale’s] personal liability
under the Note’s non-recourse exceptions.”  Wells Fargo cites Joseph Thomas,
Inc. v. Graham for the proposition that we must characterize the nonrecourse
indemnification agreement as a guaranty because it is “collateral and secondary
to the principal contract that is guaranteed in the secondary contract.”  842
S.W.2d 343, 346 (Tex. App.—Tyler 1992, no writ).  Appellees argue that this is
a “misreading of the case,” and they instead cite Graham for the
proposition that we must characterize the nonrecourse indemnification agreement
as an agreement to indemnify because “a promise to protect the promisee is an
indemnity contract.”  White focuses exclusively on the uses and variations of
the term “indemnity” throughout the nonrecourse indemnification agreement to
support his argument that “a sophisticated lender and servicer of commercial
real estate property as well as the sole drafter of all the Loan Documents”
should have drafted the non-recourse agreement to be a “guaranty” if it
intended the agreement to operate as a guaranty.  Smuck contends that under Graham,
the nonrecourse indemnification agreement does not operate as a guaranty against
him and White.  According to Smuck, “Graham stands for the proposition
that a promise to protect a third party is a guaranty, and a promise to protect
the promisee is an indemnity contract.”  Wells Fargo is the promisee on the
note.

          Historically,
an indemnification agreement is a promise “to safeguard or hold harmless the
indemnitee against existing or future loss, liability, or both.”  Nat’l City
Mortg. Co. v. Adams, 310 S.W.3d 139, 144 (Tex. App.—Fort Worth 2010, no
pet.) (citing Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d
505, 508 (Tex. 1993)).  But “[m]agic is not the quality of nomenclature,” and
simply because a party calls himself a guarantor or an indemnitor “does not
inevitably make him one.”  Wood v. Canfield Paper Co., 117 Tex. 399, 5
S.W.2d 748, 750 (Tex. 1928) (citing Davis v. Patrick, 141 U.S. 479, 12
S. Ct. 58 (1891)).  Instead, when construing promissory notes, we apply
the rules of contract construction.  See Fin. Freedom Senior Funding Corp.
v. Horrocks, 294 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2009, no
pet.) (citing EMC Mortg. Corp. v. Davis, 167 S.W.3d 406, 413 (Tex. App.—Austin
2005, pet. denied)).

          In
construing a written contract, the primary concern of the court is to ascertain
the true intentions of the parties as expressed in the instrument.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 662 (Tex. 2005).  Courts should
examine the entire writing “to harmonize and give effect to all the provisions
of the contract so that none will be rendered meaningless.”  Id. 
Contact terms are given their plain, ordinary, and generally accepted meanings
unless the contract itself shows them to be used in a technical or different
sense.  Id.  “We construe contracts ‘from a utilitarian standpoint
bearing in mind the particular business activity sought to be served,’ and when
possible, we will avoid a construction that “is unreasonable, inequitable, and
oppressive.”  Frost Nat’l Bank v. L & F Distribs., Ltd., 165 S.W.3d
310, 312 (Tex. 2005) (quoting Reilly v. Rangers Mgmt., Inc., 727 S.W.2d
527, 530 (Tex. 1987)).  We must look at all of the contract’s parts together
and be “particularly wary of isolating from its surroundings or considering
apart from other provisions a single phrase, sentence, or section of a
contract.”  State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433
(Tex. 1995).  We presume that the parties to a contract intend every clause to
have some effect.  Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118,
121 (Tex. 1996).

          The
financing granted to MBS - The Hills by Wells Fargo’s predecessor-in-interest
was nonrecourse.  Thus, MBS - The Hills’ liability—according to the note—was
only extended “to the Mortgaged Property and other collateral given to secure
the Debt, and Lender shall not enforce such liability against any other asset,
property or funds of Borrower” except under six specified conditions
immediately identified in subsections (a)–(f).  After listing the
six exceptions, the note states the following:

Items (a) through (f)
above are collectively the “Non-Recourse Exceptions”.  To the extent Borrower
is a general partnership and Lender is required under applicable law to pursue
its remedies against the persons or entities constituting Borrower, each
reference to the phrase “(including Borrower)” in the Non-Recourse Exceptions
shall be deemed to read “(including Borrower or any person or entity constituting
Borrower)”.  Borrower’s liability under the Non-Recourse Exceptions . . .
shall be limited to the amount of any losses or damages sustained by Lender in
connection with such Non-Recourse Exceptions.  [Emphasis added.]

          The
particular business activity sought to be served here is nonrecourse, commercial
financing, so we must construe the nonrecourse indemnification agreement in a
reasonable and equitable manner in accordance with that purpose.  The borrower
in this case (MBS - The Hills) was a limited partnership, so only the
general partner’s liability was at risk.  But the general partner (Normandale) was
a limited liability corporation, so the entity “constituting Borrower” was
another business entity with limited liability.  Therefore, Wells Fargo’s
predecessor-in-interest required that Smuck and White sign the nonrecourse
indemnification agreement, intending to have recourse against Smuck and White if
the nonrecourse exceptions under the note were triggered.  Specifically, the
nonrecourse indemnification agreement limits Smuck’s and White’s personal
liability to that “which Borrower at any time may be personally liable pursuant
to the non-recourse exceptions (as defined in paragraph 12 of the note).”

          Accordingly,
the note limits the lender’s recourse to the collateral used to secure the
debt, but under six circumstances, the lender has recourse against MBS - The
Hills and Normandale for “the amount of any losses or damages sustained by Lender
in connection with such Non-Recourse Exceptions.”  [Emphasis added.]  This
means that Wells Fargo may obtain a judgment against MBS - The Hills
and Normandale for damages resulting from, among other things, waste.  The note
does not give Wells Fargo full recourse against MBS -The
Hills and Normandale for the entire amount, if any, due and owing under the
note in the event MBS - The Hills and Normandale’s liability is established
under one or more of the nonrecourse exceptions.  In other words, waste
triggers liability for damages resulting from waste; waste does not trigger liability
for damages equaling amounts remaining due and owing on the note.

          Considering
the nonrecourse indemnification agreement’s limiting Smuck and White’s personal
liability to that “which Borrower at any time may be personally liable pursuant
to the non-recourse exceptions,” the nonrecourse indemnification agreement therefore
gives Wells Fargo recourse against Smuck and White for “the amount of any
losses or damages sustained by the lender in connection with such Non-Recourse
Exceptions.”  [Emphasis added.]  As with MBS - The Hills under the
note, the nonrecourse indemnification agreement does not give Wells Fargo full
recourse against Smuck and White for the entire amount, if any, due and owing under
the note in the event MBS - The Hills and Normandale’s liability is
triggered under one or more of the nonrecourse exceptions.  We hold that the
evidence supports the trial court’s finding that the nonrecourse indemnification
agreement did not operate as a guaranty of any obligation of MBS - The
Hills and Normandale.  We overrule Wells Fargo’s first issue.

V.  Personal Liability
of Smuck and White

          In its second issue, Wells
Fargo argues that Smuck and White’s personal liability is conditioned on the
liability of MBS - The Hills and Normandale, so by establishing MBS - The
Hills and Normandale’s liability, Wells Fargo established Smuck and White’s personal
liability.

          Wells
Fargo argued in its motion for interlocutory summary judgment that it had
properly served requests for admissions on MBS - The Hills and
Normandale, that MBS - The Hills and Normandale had failed to respond
to the requests for admissions, that the failure to respond resulted in the
matters being deemed admitted as a matter of law, and that the deemed
admissions constituted competent summary judgment evidence against MBS - The
Hills and Normandale.  Several of the requests for admissions included the
following:

5.       Borrower
committed waste with respect to the Property.

6.       Normandale
committed waste with respect to the Property.

. . . .

8.       Property
was foreclosed upon on June 10, 2008.

9.       The
net proceeds of the foreclosure sale of the Property resulted in a deficiency
amount of at least $5,214,572, exclusive of the accrued interest.

[Emphasis
added.]

In
light of the deemed requests for admissions, Wells Fargo argued that MBS -The
Hills and Normandale had committed waste and that the
commission of waste therefore “trigger[ed] full recourse liability under
section 12(a) of the Note.”  [Emphasis added.]  Indeed, according to
Wells Fargo, it claimed to be “entitled to summary judgment on its claims
against [MBS - The Hills and Normandale] for the full recourse balance
of the Note.”  [Emphasis added.]  Sustaining Wells Fargo’s argument, the
trial court granted summary judgment for Wells Fargo and awarded it
$5,904,537.61, an amount representing the deficiency owed on the note as
of December 2008—not an amount representing damages for waste.[4]

          Later,
at the final trial on Wells Fargo’s claims against Smuck and White, Wells Fargo
offered several exhibits into evidence, including the note and the nonrecourse
indemnification agreement, and rested.  Wells Fargo did not offer any testimony
or evidence of any amounts of damages resulting from waste.

          The
record is clear.  The judgment that Wells Fargo obtained against MBS - The
Hills and Normandale was not for damages resulting from waste, as the note
unambiguously contemplates.  Instead, Wells Fargo obtained a deficiency
judgment representing the amount owed on the note as of December 2008.  Wells
Fargo did not offer any evidence of damages resulting from waste either as part
of its summary judgment evidence or at the final trial against Smuck and White.[5] 
Consequently, because the nonrecourse indemnification agreement limits Smuck
and White’s personal liability to MBS - The Hills and Normandale’s liability
under the nonrecourse exceptions; because Wells Fargo obtained a deficiency
judgment against MBS - The Hills and Normandale on account of their
commission of waste instead of a judgment for damages caused by waste; and
because Wells Fargo offered no evidence at trial of any damages resulting from
MBS - The Hills and Normandale’s waste, the trial court’s challenged
conclusions are not erroneous.

          The
dissent cites White v. MLMT 2004-BPC1 Carlyle Crossing, LLC, to support
its contention that the note should be construed as a guarantee, but White
actually demonstrates precisely why Wells Fargo is not entitled to recover from
Appellees.  See No. 02-10-00233-CV, 2011 WL 3672022, at *6 (Tex.
App.—Fort Worth Aug. 18, 2011, pet. denied) (mem. op.).  In White,
the appellee sued MBS - Carlyle Crossing, Smuck, and White under the
$5.5 million promissory note and the nonrecourse indemnification agreement.  Id.
at *1.  The trial court rendered a judgment in favor of MLMT for $1,766,355.52
for damages resulting from waste, and this court reviewed the legal and factual
sufficiency of the evidence to support that award.  Id. at *1–6.  Unlike
in this case, the noteholder presented evidence and proved damages attributable
to waste.

          Although
Wells Fargo proved as a matter of law that MBS - The Hills and
Normandale committed waste, there is no evidence in the record of the amount of
any losses or damages that Wells Fargo sustained in connection with MBS -The
Hills and Normandale’s commission of waste.  Accordingly, we overrule Wells
Fargo’s second issue.

VI.  Conclusion

          Having
overruled both of Wells Fargo’s issues, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

 

GABRIEL, J. filed a dissenting opinion.

 

DELIVERED: 
December 8, 2011




 









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00289-CV

 


 
 
 Wells Fargo Bank, N.A. f/k/a Wells Fargo Bank
 Minnesota, N.A., as Trustee for The Registered Holders of J.P. Morgan Chase
 Commercial Mortgage Securities Corp., Commercial Mortgages Pass-Through
 Certificates, Series 2003-PMI, ACTING BY AND THROUGH ORIX CAPITAL MARKETS,
 llc
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 MBS - The Hills, Ltd., 3101 W. Normandale, L.L.C.,
 Michael B. Smuck, and Edwin A. White
 
 
  
 
 
 APPELLEES
 
 


 

----------

FROM THE 17th
District Court OF Tarrant COUNTY

----------

DISSENTING
MEMORANDUM OPINION[6]

----------

          I
respectfully dissent from the majority’s holding that Wells Fargo’s agreement with
Smuck and White is not a guaranty and that Smuck and White are not liable for
the judgment against MBS - The Hills and Normandale (the Borrowers).

I.  The
indemnity agreement functions as a guaranty.

          As
the majority explained, MBS - The Hills is a limited partnership, and
its general partner Normandale is a limited liability company.  Wells Fargo
required Smuck and White to sign the indemnification agreement so that it would
have an avenue to recoup its investment should the nonrecourse exceptions be
triggered.[7]  Indeed, the
indemnification agreement states, “As a condition to making the Loan, Lender
has required that Indemnitor indemnify Lender with respect to the matters set
forth herein.”  When we construe the agreement, we are required to bear that
intention in mind.  See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)
(“In construing a written contract, the primary concern of the court is to
ascertain the true intentions of the parties as expressed in the instrument.”).

When
the exceptions were triggered, the Borrowers became liable under the note for
“the amount of any losses or damages sustained by [Wells Fargo] in connection
with” the exceptions.  When the Borrowers became liable under the note, Smuck
and White became liable under the indemnity agreement.  The agreement, although
styled as an indemnity agreement, essentially “functioned as a guarantee that
if [MBS - The Hills] did not make good on any obligation for which it
was liable under recourse provisions of the note . . . ,
[Smuck and White] would make good on them.”  White v. MLMT 2004-BCP1 Carlyle
Crossing, LLC, No. 02-10-00233-CV, 2011 WL 3672022, *6 (Tex. App.—Fort
Worth Aug. 18, 2011, pet. denied) (mem. op.) (construing a nearly
identical indemnity agreement);[8] see also Farmers &
Merchs. State Bank of Krum, 79 S.W.3d 615, 617 (Tex. App.—Eastland 2002, pet.
denied) (quoting Bohart v. Universal Metals and Machinery, Inc., 523
S.W.2d 279, 288–90 (Tex. Civ. App.—Dallas 1975) (Guittard, J., dissenting), rev’d,
539 S.W.2d 874 (Tex. 1976)) (“A ‘guaranty’ is a [species] of indemnity
contract.  It is a promise to stand responsible for occurrence of an event that
may not be directly within the control of the immediate parties of the
contract.”).

Paragraph
2 of the agreement states, in whole,

2.
Indemnity.  INDEMNITOR HEREBY ASSUMES LIABILITY FOR AND AGREES TO PAY, PROTECT,
INDEMNIFY, DEFEND AND HOLD HARMLESS LENDER . . . FROM AND
AGAINST ANY AND ALL LIABILITIES, OBLIGATIONS, LOSSES, DAMAGES, COSTS AND
EXPENSES (INCLUDING ATTORNEYS’ FEES), CAUSES OF ACTION, SUITS, CLAIMS, DEMANDS
AND JUDGMENTS WHICH AT ANY TIME MAY BE IMPOSED UPON, INCURRED BY OR AWARDED
AGAINST LENDER AND FOR WHICH BORROWER AT ANY TIME MAY BE PERSONALLY LIABLE
PURSUANT TO THE NON-RECOURSE EXCEPTIONS (AS DEFINED IN PARAGRAPH 12 OF THE
NOTE).  EACH PERSON OR PARTY EXECUTING THIS INDEMNITY AGREES THAT THE LIABILITY
HEREUNDER SHALL BE JOINT AND SEVERAL.

Smuck
argues that the language “judgments which at any time may be imposed upon,
incurred by or awarded against Lender and for which Borrower at any time may be
personally liable” requires Smuck and White to assume liability only for
obligations for which Wells Fargo would be liable to a third party based on MBS - The
Hills’s violation of the nonrecourse exceptions.  This is far too narrow a
reading and makes little sense in light of the reason why Wells Fargo required
the agreement.  See Coker, 650 S.W.2d at 393 (noting that to achieve the
objective of ascertaining the parties’ intentions, “courts should examine and
consider the entire writing in an effort to harmonize and give effect to
all the provisions of the contract so that none will be rendered
meaningless”).  Paragraph 2 protects against much more than just claims against
Wells Fargo for the Borrowers’ actions.  It also offers coverage for “any and
all liabilities, obligations, losses, damages, costs and expenses . . .
incurred by . . . Lender” as the result of the nonrecourse
exceptions, which was the case here.

While
an indemnity agreement protects against actions by third parties, Nat’l City
Mortg. Co. v. Adams, 310 S.W.3d 139, 144 (Tex. App.—Fort Worth 2010, no
pet.) (citing Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d
505, 508 (Tex. 1993)) (noting that an indemnity contract “obligates the
indemnitor to protect the indemnitee against liability claims of persons not a
party to the agreement”), the agreement between Smuck and White and Wells Fargo
protects against more than that.  Further, it is clear from the language of the
agreement that the parties intended the agreement not to stand alone like a
traditional indemnity agreement but to be “collateral and secondary to the
principal contract that is guaranteed in the secondary contract” like a
guaranty.  Joseph Thomas, Inc. v. Graham, 842 S.W.2d 343, 346 (Tex.
App.—Tyler 1992, no writ).  For these reasons, I believe the contract should be
construed as functioning as a guaranty of payment if the nonrecourse exceptions
were violated.  See White, 2011 WL 3672022, at *6.

II.  The
judgment against the Borrowers was not a deficiency judgment.

The
Borrowers were served with requests for admissions and each failed to respond. 
As a result, the following requests were deemed admitted:

REQUEST FOR ADMISSION
NO. 3:

Admit that [MBS - The
Hills] took unreasonable actions and unreasonably failed to act in its
management of the Property.

 

REQUEST FOR ADMISSION
NO. 4:

Admit that Normandale
took unreasonable actions and unreasonably failed to act in its management of
the Property.

 

REQUEST FOR ADMISSION
NO. 5:

Admit that [MBS - The
Hills] committed waste with respect to the Property.

 

REQUEST FOR ADMISSION
NO. 6:

Admit that Normandale
committed waste with respect to the Property.

 

. . . .

 

REQUEST FOR ADMISSION
NO. 13:

Admit that under the
Note, [MBS - The Hills] agreed that impairing the rights of [Wells
Fargo] to foreclose on the Deed of Trust and obtain title to the Property would
be excepted from the otherwise non-recourse nature of the Note.

 

REQUEST FOR ADMISSION
NO. 14:

Admit that liens
remain on the Property after the foreclosure sale of the Property.

. . . .

 

REQUEST FOR ADMISSION
NO. 16:

Admit that allowing
the liens to remain on the Property triggered full recourse liability for [MBS - The
Hills].

 

REQUEST FOR ADMISSION
NO. 17:

Admit that commission
of waste on the Property triggered full recourse liability for [MBS - The
Hills].

 

REQUEST FOR ADMISSION
NO. 18:

Admit that [MBS - The
Hills] and Normandale are jointly and severally liable under the Note for all
losses and damages resulting from waste committed on the Property.

 

. . . .

 

REQUEST FOR ADMISSION
NO. 20:

Admit
that [MBS - The Hills] and Normandale are jointly and severally
liable under the Note for all losses and damages from [MBS - The
Hills]’s failure to clear the liens that impaired [Wells Fargo]’s right to
foreclose on the Property.

The
deemed admissions establish that the nonrecourse exceptions had been violated. 
See Oliphant Fin., LLC v. Galaviz, 299 S.W.3d 829, 838 (Tex. App.—Dallas
2009, no pet.) (“Deemed admissions may be employed as proof, and once
admissions are deemed admitted by operation of law and where the admissions
fully support each element of a cause of action, including damages, they will
fully support a judgment based thereon.”).  Wells Fargo provided competent
summary judgment evidence in the form of deemed admissions proving that the
Borrowers committed waste on the property and that liens remain on the
property, both of which triggered the Borrowers’ personal liability under the
nonrecourse exceptions.

The
Borrowers’ liability under the nonrecourse exceptions was limited to “the
amount of any losses or damages sustained by Lender in connection with such
Non-Recourse Exceptions.”  However, the Borrowers were deemed to have admitted
that they were liable for the full balance of the note.  In its motion for
summary judgment, Wells Fargo argued in essence that its damages resulting from
the Borrowers’ violations of the nonrecourse exceptions equaled the balance of
the note.  The Borrowers did not file a response to the motion or otherwise
argue that they were liable for any lesser amount.  The trial court granted
summary judgment against the Borrowers and awarded Wells Fargo the full
$5,904,537.61 that it sought.

The
trial court’s order set the amount of damages in connection with the violation
of the nonrecourse exceptions as a matter of law.  See Mann Frankfort
Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex.
2009) (noting that a movant meets the summary judgment burden by establishing
that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law).  The trial court specifically found in the
Additional Findings of Fact and Conclusions of Law that the Borrowers are
jointly and severally liable through the nonrecourse liability exceptions.  The
trial court obviously understood that Wells Fargo was not seeking, nor entitled
to, a deficiency judgment but was only entitled to recover under the defined
nonrecourse exceptions.[9]

The
majority seems to say that because the damages amount equaled the balance of
the note, Wells Fargo received a deficiency judgment, and thus Smuck and White
cannot be held liable for the damages.  The majority says that the trial
court’s award of $5,904,537.61 represents the “deficiency owed on the
note as of December 2008—not an amount representing damages for waste.”  Majority
Op. at 12.  The trial court’s judgment says nothing about a deficiency
judgment.  Wells Fargo never made a claim for a deficiency judgment, either in
its supplemental petition or in its motion for interlocutory summary judgment,
which is the basis for the trial court’s interlocutory summary judgment.  In
fact, in its motion for interlocutory summary judgment, Wells Fargo notes,

Although Wells Fargo
meets the elements for recovery under a promissory note . . . ,
the obligations of [the Borrowers] are generally non-recourse unless certain
exceptions exist.  Exceptions do exist, and [the Borrowers, Smuck, and White]
are jointly and severally liable for the losses, damages and expenses incurred
by Wells Fargo pursuant to Sections 12(a) and 12(b) of the Note for:

(a)   Waste; and

(b)   Impairment
of [Wells Fargo’s] right to foreclose on the Property.

The
trial court’s judgment must conform to the pleadings.  Tex. R. Civ. P. 301; see
Khalaf v. Williams, 814 S.W.2d 854, 858 (Tex. App.—Houston [1st Dist.]
1991, no writ).  It is clear from its motion for interlocutory summary judgment
that Wells Fargo knew that it had contracted away its right to sue for a
deficiency judgment.  Wells Fargo also knew that it retained the right to seek
recovery under the nonrecourse exceptions if they were triggered.  Wells Fargo
did not and could not receive a deficiency judgment.  Therefore, the amount of
the damages award, regardless of whether it equaled the balance of the note,
could only be damages for Wells Fargo’s cause of action against the Borrowers for
their violation of the nonrecourse exceptions as proven by the deemed
admissions.

If
the majority’s complaint is about of the adequacy of the evidence to support
the amount of damages Wells Fargo incurred in connection with the nonrecourse
exceptions, I note that the interlocutory summary judgment that allegedly
incorrectly found the evidence sufficient is not before us.  The only issues
presented for our review involve that part of the amended final judgment of
July 15, 2010, regarding the claims against Smuck and White.  It is
immaterial to the issue of Smuck and White’s liability that the award against
the Borrowers equaled the balance on the note.  The amount of the interlocutory
summary judgment award has not been challenged, and we are not to examine
whether it was a correct or fair amount.  If Wells Fargo was awarded more than
it should have been, that is the risk the guarantors took when they agreed to
guaranty another’s obligation.  Smuck and White agreed to pay for the damages
Wells Fargo suffered as a result of the nonrecourse exceptions, and they are
liable for the amount that was awarded.

The
interlocutory summary judgment was not based on the Borrowers’ failure to pay
the note; it was based on the Borrowers’ waste.  The indemnification agreement
makes the indemnitor’s liability co-extensive to that of Borrowers’ personal
liability under the nonrecourse exceptions.  The Borrowers were found to have
violated the nonrecourse exceptions, triggering their personal liability. 
Because the indemnity agreement functions as a guaranty, I would hold Smuck and
White liable to Wells Fargo for the unchallenged damages award.

 

 

LEE GABRIEL
JUSTICE

 

DELIVERED:  December 8, 2011









[1]See Tex. R. App. P. 47.4.





[2]The loan was originally
obtained from PNC Bank, National Association, but it was later assigned to
Wells Fargo.





[3]MBS-The Hills and
Normandale were represented by counsel, but midway through the case, counsel
withdrew.  No substitute counsel appeared on their behalf regarding the summary
judgment.





[4]The dissent’s contention
that the trial court’s order awarding Wells Fargo $5,904,537.61 “set the amount
of damages in connection with [the nonrecourse] exceptions” is simply
incorrect.  Dissent op. at 7.  [Emphasis added.]





[5]Wells Fargo included the
affidavits of Charles Crouch and Bruce Woodward as part of its summary judgment
evidence, but neither affidavit addressed damages for waste.





[6]See Tex. R. App. P. 47.4.





[7]The majority opinion
recognizes the intent of the parties by stating, “Wells Fargo’s
predecessor-in-interest required that Smuck and White sign the nonrecourse
indemnification agreement, intending to have recourse against Smuck and White
if the nonrecourse exceptions under the note were triggered.”  Majority Op. at
9.





[8]The majority claims that White
is inapposite to this case because the trial court in White did not
award a deficiency judgment, as the majority claims the trial court did in this
case.  As discussed below, the trial court here did not grant a deficiency
judgment.  Regardless, we cite White here for the proposition that the
indemnity agreement in that case “functioned as a guarantee,” precisely as the
agreement functions in this case.  That proposition is relevant whether the
judgment in this case is a deficiency judgment or not.





[9]Even Smuck recognizes that
the court’s judgment was not a deficiency judgment but instead “[t]he
Interlocutory Judgment against [MBS-The Hills] was for waste damages caused
[to] Wells Fargo by [MBS-The Hills] . . . .”  White is the
only party to this litigation who argues that the interlocutory summary
judgment order granted a deficiency judgment.  He states that the trial court’s
summary judgment order did not specify that waste had occurred.  His argument
is defeated however by the trial court’s specific finding of October 20,
2010 that “[the Borrowers] are jointly and severally liable under the Note by
reason of and through the non-recourse liability
exceptions . . . .”  The trial court was explicit and
simply calling it a deficiency judgment does not make it so.